```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division


CATALINA MARKETING            )
CORPORATION,                  )
                              )
     Plaintiff,               )
                              )
          v.                  )    1:11cv659 (JCC/TRJ)
                              )
DAVID KAPPOS,                 )
                              )
     Defendant.               )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant David Kappos's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Dkts. 6, 7] and Plaintiff Catalina Marketing Corporation's[1] cross Motion for Summary Judgment [Dkt. 13]. For the following reasons, the Court will grant Defendant's Motion to Dismiss and deny Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.

**I.   Background**

A.   Factual Background

On July 16, 2005, Roy Simrell submitted a patent application (the Application) for an "AMBER alert system and method for locating missing children." (Administrative Record [Dkt. 9-1] at A001-044.) The Application contained 33 claims.

---

[1] On August 31, 2011, this Court granted Plaintiff's motion to change the name of Plaintiff from "Catalina Marketing International, Inc." to "Catalina Marketing Corporation." [Dkt. 11.]

1

(A026-031.)  And all claims that were labeled had the identifier "Original."  (A027-031.)  Catalina Marketing Corporation claims to be the assignee of all rights in the patent.  [See Dkt. 5.]

On April 18, 2008, a United States Patent and Trademark Office (USPTO) examiner issued a non-final rejection of all of the claims in the application.  (A058-076.)  In response to the rejection, Plaintiff submitted an amendment (the Amendment) to its patent claims on July 17, 2008.  (A077-091.)  In the Amendment, each of the claims was labeled with one of the following status identifiers: "Currently Amended," "Previously Presented," or "Canceled."  (A081-A086.)

On November 3, 2008, the USPTO examiner issued a Notice of Non-Compliant Amendment, in which it found that the Amendment did not conform with 37 C.F.R. § 1.121.  (A092-095.)  The notice of non-compliance stated, "[e]ach claim has not been provided with the proper status identifier, and as such, the individual status of each claim cannot be identified."  (A094.)  The examiner explained that "[c]laims which have not been amended and are part of the original set of claims should be indicated as being "Original" and that "[t]he identifier 'Previously Presented' is used for [claims] which have been previously amended or were not part of the original set of claims filed with the application."  (A095.)

2

On November 25, 2008, Plaintiff filed a supplemental amendment (the Supplemental Amendment) in which all but one of the claims labeled as "Previously Presented" in the Amendment were re-labeled as "Original." (A096-A109.) About four months elapsed, therefore, between the time Plaintiff filed the Amendment and the Supplemental Amendment. Under 37 C.F.R. § 1.704(c)(7) that four month delay is credited as Catalina's failure to engage in reasonable efforts to conclude prosecution. As a result, the length of any potential patent term would be reduced by the length of such a delay. *See* 37 C.F.R. § 1.704(c)(7).

In its Supplemental Amendment, Plaintiff objected to the examiners interpretation of 37 C.F.R. § 1.121, arguing that the requirement that the claims be re-designated as "Original" was baseless. (A104.) And on December 19, 2008, Plaintiff filed a "Petition to Withdraw the Notification of Non-Compliant [Amendment]." (A113-A118.) Catalina requested the Director to reinstate the original Amendment and "specify in the decision that the application will not lose patent term based upon 37 C.F.R. 1.704(c)(7). . . ." (A114.) The USPTO denied Catalina's petition on April 29, 2009, again citing 37 C.F.R. § 1.121. (A133-134.)

On June 4, 2009, Catalina petitioned the Office of the Commissioner to review that denial (the Petition). (A135-144.)

3

On April 7, 2010, the USPTO dismissed that Petition as moot on the grounds that Catalina had "presented a complying amendment of the claims in response to the Notice of Noncompliant Amendment," instead of requesting that the requirement be held in abeyance. (A218-219.) Catalina then requested reconsideration on April 16, 2010, again arguing that the "Previously Presented" label is consistent with 37 C.F.R. § 1.121. (A220-241.) After reviewing the request for reconsideration, on April 20 the USPTO vacated its April 7 finding that the Petition was moot. (A242-246.) But the USPTO did so in a "Corrected Decision on Petition," whereby it reaffirmed its denial of the Petition. (A242-246.) In this corrected decision the Petition was denied because the USPTO found that Catalina had not complied with 37 C.F.R. § 1.121 when it labeled claims as "Previously Presented" instead of "Original." *Id.*

On April 22, 2010, Catalina filed a second request for reconsideration, persisting in the argument that its labeling of the claims was consistent with 37 C.F.R. § 1.121. (A247-A255.) On May 31, 2011, the USPTO Commissioner issued a final decision (the Petition Decision). (A266-A271.) In the Petition Decision, the USPTO denied the second request for reconsideration finding that the Amendment incorrectly

4

identified claims that should have been labeled as "Original" as "Previously Presented."  (A269.)

While the argument about appropriate labels was being had, Catalina was also in the process of challenging the rejection of the patent application.  On March 9, 2009, the USPTO issued a non-final office action again rejecting the patent (A120-A132), which it confirmed on October 2, 2009 (A198-A203).  Catalina appealed these rejections to the Board of Patent Appeals and Interferences.  (See A205-214, A247-AA255, A258-A260.)  Those appeals are pending. [See Dkt. 16-1.]

    B.    <u>Procedural Background</u>

On June 17, 2011, Plaintiff filed its Complaint pursuant to 5 U.S.C. §§701-706 and Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 554 et. seq.  (Compl. [Dkt. 1] ¶ 1.)  Plaintiff requests this Court to order the Director of the USPTO to find Catalina's July 2008 Amendment compliant with 37 C.F.R. § 1.121 and specify that Catalina will not lose any of the patent term as a result of 27 C.F.R. § 1.704(c)(7).  (Compl. ¶ 31.)  On August 16, 2011, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  [Dkts. 6, 7.]  Plaintiff filed a reply on September 22, 2011, along with a cross Motion for Summary Judgment.  [Dkt. 13.]  Defendants filed an opposition to

Plaintiff's cross motion and a reply on October 4, 2011. [Dkt. 16.]

These motions are now before the Court.

## II. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean

6

*Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994); *Velasco v. Gov't of Indonesia,* 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment"). In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.,* 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

### III. Analysis

At the threshold, Defendant asserts that Plaintiff's claim must be dismissed under the ripeness and standing doctrines. (Defendant's Memorandum (D. Mem.) [Dkt. 8] at 13-14.) More specifically, Defendant argues that Catalina's injury is speculative because, although Catalina could suffer a shorter patent term as a result of the USPTO's Petition Decision, Catalina does not yet have the patent. (D. Mem. at 12.)

A. <u>Justiciability Doctrines</u>

"[I]t is well-settled that federal courts may only adjudicate cases or controversies under Article III of the

7

Constitution." *Mohammed v. Holder*, 695 F. Supp. 2d 284, 289 (E.D. Va. 2010) (citing *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997)). "To that end, '[t]he Supreme Court has developed a number of constitutional justiciability doctrines . . . including . . . the doctrines of standing, ripeness, and mootness.'" *Id.* (quoting *United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007)).

The ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Ostergren v. Cuccinelli*, 615 F.3d 263, 288 (4th Cir. 2010) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Courts assess ripeness by "balanc[ing] the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Id.* (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (internal quotations omitted)).

The "irreducible constitutional minimum of standing requires (1) an injury in fact--a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation--a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability--a likelihood that the requested relief will redress the alleged injury." *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. Va. 2010) (quoting *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (internal quotation marks and citations omitted). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (setting forth the three-part constitutional test for standing).

The standing and ripeness doctrines are closely related, as they are both "simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991). More specifically, "[p]laintiff's personal stake in the outcome (standing) is directly limited by the maturity of the harm (ripeness)." *Doe v. Duling*, 782 F.2d 1202, 1206 n.2 (4th Cir. 1986). "[B]oth doctrines require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy." *Id*. Because the parties' justiciability arguments focus predominantly on ripeness, only that doctrine is considered here. (*See* D. Mem. at 14.)

### B. The Patent Application

The issue of ripeness "is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Both parties in this case agree that Catalina passes the first ripeness hurdle of whether the issue is fit for judicial decision. (D. Mem. at 14; Plaintiff

9

Memorandum (P. Mem.) [Dkt. 14] at 5.) Their disagreement is over the hardship prong. Hardship "is measured by the immediacy of the threat and the burden imposed on the [plaintiff] who would be compelled to act under threat of enforcement of the challenged law." *Andrew v. Lohr*, 2011 U.S. App. LEXIS 18416, 2-3 (4th Cir. Va. Sept. 2, 2011)(quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)(internal quotations omitted). The burden of proving ripeness falls on the party bringing suit. *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

The Supreme Court issued two decisions on the same day illustrating what constitutes an immediate and substantial impact under the hardship prong. In one decision the Court found that issue was ripe for review as the pertinent FDA regulations had a "direct and immediate" impact on the plaintiff drug manufacturers' day-to-day activities. *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967). The Court reasoned that without a declaratory judgment promptly clarifying the law, the manufacturers would be faced with the choice of either: (i) "chang[ing] all their labels, advertisements, and promotional materials; . . . destroy[ing] stocks of printer matter; and . . . invest[ing] heavily in new printing type and new supplies"; or (ii) continuing to use material that it believed in good faith to comply with the statute, but not the regulation, thereby

10

"risk[ing] serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs." *See id.* at 152-53.

In the other decision, the Court found the regulatory challenge unripe because "no primary conduct [was] affected" by the regulation such that the manufacturers would suffer "irremediable adverse consequences flow[ing] from requiring a later challenge." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164-65 (1967). A manufacturer faced only suspension of its certificate pending judicial review and was not subject to "seizure of goods, heavy fines, adverse publicity for distributing 'adulterated' goods, [or] possible criminal liability." *Id.*

Applying these principles, this Court finds that Catalina's request for review of the USPTO's Petition Decision is not ripe and therefore is not justiciable. The only harm that Catalina identifies as resulting from the Petition Decision is that it will lose about four months on its potential patent term. That is, Catalina could lose the time between July 17, 2008, and November 25, 2008, when the USPTO found it not in compliance with the labeling regulation 37 C.F.R. § 1.121. Catalina has failed to demonstrate that the Petition Decision is causing the company any immediate threat concerning its day-to-day operations, such as the imposition of civil or criminal penalties.

11

Moreover Catalina's injury is speculative because Catalina does not yet have the patent and may never obtain it. The patent examiner has twice rejected the application and Catalina's appeals are still pending.  Thus, Catalina's claim rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Tex. v. United States*, 523 U.S. 296, 300 (1998)(internal quotations omitted). It follows that if a determination about the labeling regulation were to issue now, and then be followed by a later USPTO decision denying Catalina the patent, the finding about 37 C.F.R. § 1.121 would be an advisory opinion.  *See Sigram Schindler Beteiligungsgesellschaft mbH v. Kappos*, 675 F. Supp. 2d 629, 634-38 (E.D. Va. 2009)(explaining that plaintiff's claim failed to clear the hardship prong of the ripeness requirement because, if the Board of Patent Appeals and Interferences made a decision favorable to the plaintiff, the court's declaratory judgment would be an advisory opinion).

The ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136,

148-49 (1967).  Accordingly, the case is dismissed without prejudice[2] for lack of subject matter jurisdiction.

### IV. Conclusion

For these reasons, the Court will GRANT Defendant's Motion to Dismiss and DENY in part Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.

An appropriate Order will issue.

|  |  |
|---|---|
| | /s/ |
| October 19, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[2] Catalina argues that it could not challenge the appropriateness of its use of status identifiers after a patent has been issued (P. Mem. at 7), but this case is dismissed without prejudice and Catalina would also be able to appeal the patent term adjustment under 35 U.S.C. § 154(b)(4).